```
        IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                    DIVISION OF ST. CROIX

RUBY URGENT                      :    CIVIL ACTION
                                 :
       v.                        :
                                 :
UNITED STATES MARSHALS SERVICE   :    NO. 13-91
```

MEMORANDUM

Bartle, J.                                          March 1, 2016

In this employment discrimination action, plaintiff Ruby Urgent ("Urgent") has sued the United States Marshals Service ("USMS") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Urgent alleges that the USMS retaliated against her by failing to hire her for a court security officer ("CSO") position because her roommate had previously sued MVM, Inc. ("MVM"), the company with which the USMS contracted to provide court security officers.

Now before the court is the motion of the USMS for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

I.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  See id. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.

When ruling on a motion for summary judgment, we may only rely on admissible evidence.  See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 94-95 (3d Cir. 1999).  We view the facts and draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

A party asserting that a particular fact "cannot be or is genuinely disputed must support the assertion by [ ] citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  In

reviewing a motion for summary judgment, the court may consider any materials in the record but is not required to look beyond those materials cited by the parties.  See Fed. R. Civ. P. 56(c)(3).  It is not the responsibility of the court to "comb the record in search of disputed facts."  See N.J. Carpenters Pension Fund v. Hous. Auth. & Urban Redevelopment Agency, 68 F. Supp. 3d 545, 549 (D.N.J. 2014).  Our Court of Appeals has emphasized that "'[j]udges are not like pigs, hunting for truffles buried in' the record." Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)).

II.

The following facts are undisputed or viewed in the light most favorable to Urgent as the nonmoving party.

In July 2011, Urgent was a forty-nine year old woman when she submitted an application to MVM for a CSO position at the District Court of the Virgin Islands in St. Croix.  The USMS contracted with MVM to provide security services at the federal courthouses in the Virgin Islands.  MVM supervised and paid the CSOs.

Upon receiving Urgent's application, MVM conducted an initial interview of Urgent.  It then forwarded Urgent's application to the USMS so that the USMS could conduct a background investigation.  The USMS acted under a national

policy directive requiring that background investigation reports be completed within twenty-one days of a request. Extensions could be granted at the discretion of Chief Deputy United States Marshal Reggie Bradshaw ("Chief Bradshaw").

In August 2011, Deputy United States Marshal Darby Kirby ("Deputy Kirby") was assigned to conduct a background investigation of Urgent and one other candidate for the same position. Deputy Kirby first interviewed Urgent on September 8, 2011. Then, as her investigation continued, Deputy Kirby discovered that Urgent lived with Deidre Finch ("Finch") and Finch's son.[1] Although the application for the CSO position did not ask about roommates, Deputy Kirby had been under the impression that Urgent lived alone and contacted Urgent for clarification. Urgent explained that Finch and her son were only temporarily staying with her. Deputy Kirby later learned that Finch had been employed as the Lead CSO at the District Court on St. Croix until she was terminated. Following her termination, Finch filed a lawsuit against MVM alleging sex discrimination.

Deputy Kirby made a note in the "Special Factors" section on Urgent's background investigation report that former Lead CSO Finch was staying with Urgent. After receiving this information, Daniel Winfield ("Winfield"), the Judicial Security

---

1. Deidre Finch was formerly known as Deidre Valmont.

-4-

Inspector for the Virgin Islands charged with overseeing background investigations, directed Deputy Kirby to submit her background investigation report on Urgent by October 14, 2011.

Because Urgent had previously been employed for twenty years by the Virgin Islands Police Department, Deputy Kirby was required to review Urgent's file at the Virgin Islands Police Department Internal Affairs Office ("Internal Affairs Office") during her background investigation. In late September 2011, Deputy Kirby brought Urgent's signed "Authorization for Release of Information" form to the Internal Affairs Office. However, Deputy Kirby was unaware that to review the file she also needed to make a written request to the Commissioner of the Virgin Islands Police Department and provide a copy of the Virgin Islands Police Department's authorization form signed by Urgent.

Deputy Kirby submitted the written request to the Commissioner on October 5, 2011, and Urgent delivered her signed authorization on October 11, 2011. Yet, Deputy Kirby was unable to complete the required file review before submitting her report by the October 14, 2011 deadline. As a result, Deputy Kirby marked Urgent's background investigation report incomplete when she submitted it to Winfield. Winfield recommended to Chief Bradshaw that Urgent's application no longer be considered because the background investigation was incomplete. When Chief Bradshaw forwarded Deputy Kirby's report to the Judicial

Security Division of the USMS, he also recommended removing Urgent's application from consideration.

Approximately one to two weeks after Deputy Kirby submitted her report on Urgent, the Internal Affairs Office notified Deputy Kirby that Urgent's files were available for review. Deputy Kirby attempted to supplement her report with these files, but Winfield refused to accept the files because the investigation was already in the hands of the Judicial Security Division.

On November 15, 2011, Urgent received notice from Lead CSO Gregory Evans that she was not selected for the CSO position because she did not pass the background investigation. Despite efforts to learn more, Urgent was unable to contact someone at the USMS or MVM who would provide her with further explanation.

On November 18, 2011, Urgent filed a complaint at the Equal Employment Opportunity Office ("EEO") of the USMS alleging discrimination because of age, gender, and reprisal in the hiring process for the CSO position. Then, on November 26, 2011, Urgent learned from a former CSO that she had not been hired because she lied on her application in stating that she lived alone.

On January 3, 2012, Urgent submitted a formal administrative complaint alleging sex discrimination, age discrimination, and reprisal. An EEO investigator then

-6-

contacted Urgent to discuss her complaint. Urgent explained to the investigator that she did not understand the meaning of the word <u>reprisal</u> and that she was under the mistaken belief that reprisal and retaliation were different claims. She informed the investigator that her action against the USMS was based on the alleged retaliation by the USMS in failing to hire her because of her association with Finch. Urgent asserted that the USMS purposefully failed her on her background investigation in retaliation for Finch's sex discrimination lawsuit against MVM.

The EEO accepted Urgent's claims of sex and age discrimination for investigation on January 18, 2012. With regard to her reprisal claim, the letter "noted that Complainant was contacted and confirmed that she mistakenly checked reprisal as a basis on the formal complaint form and scratched it out; reprisal is not an alleged basis of discrimination in the instant complaint." Urgent received this letter but failed to address it because of her misunderstanding of the word <u>reprisal</u>.

On May 21, 2013, the EEO issued its final decision on her administrative complaint along with notice of her right to appeal. It found insufficient evidence of sex or age discrimination.

The EEO decision also addressed Urgent's retaliation claim. It recited Urgent's factual support for her retaliation claim, including that: (1) former CSO Finch temporarily resided

with Urgent; (2) Finch had filed a lawsuit against MVM alleging that she was terminated because of discrimination; and (3) another CSO informed Urgent that she was not hired because she lied in stating that she lived alone. After reciting these allegations, the EEO concluded that "Complainant's claim that USMS denied her application because she lived with Finch is insufficient to rebut the legitimate, nondiscriminatory reason proffered by management."

The EEO elaborated: "[e]ven if it were true that USMS's decision was influenced by its knowledge that complainant was associated with Finch, based on the facts in the record, that association is not a protected factor under the civil rights laws." It considered legal principles in Title VII and Executive Order 13152 in determining that Urgent could not prove the alleged discrimination. Finally, the EEO noted that "[a]lthough the Supreme Court has recognized certain retaliation claims for third parties under Title VII . . . because the record does not contain facts indicating as a threshold matter that Finch brought an EEO claim, there is insufficient factual basis here to conclude that USMS retaliated against complainant because her cohabitant brought a prior EEO claim."

On August 28, 2013, Urgent brought this action against the USMS alleging discrimination based on retaliation only.

III.

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, and national origin. See 42 U.S.C. § 2000e, et seq. An employer may not discriminate against a job applicant "because [s]he has opposed any practice made an unlawful employment practice by" Title VII "or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the statute. See § 2000e-3(a). The aggrieved person does not have to be the same person alleging a violation of Title VII, but must be "someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage or prevent the person from pursuing those rights." See Thompson v. N. Am. Stainless, LP., 562 U.S. 170, 179 (2011) (Ginsburg, J., concurring).

In proving that the defendant violated Title VII, the plaintiff "must show that he or she: (1) is a member of a protected class; (2) was qualified for the position sought; (3) was subject to an adverse employment action despite being qualified; and, (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff to fill the position." Lula v. Network Appliance, 255 F. App'x 610, 611–12 (3d Cir. 2007) (citing Sarullo v. U.S. Postal Serv., 352 F.3d

789, 797 (3d Cir. 2003)).  In proving her prima facie case of retaliation, the plaintiff must demonstrate a causal connection between her protected activity and an adverse employment action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 60 (2006)).

If the plaintiff makes out a prima facie case, the defendant must respond with a legitimate, nondiscriminatory reason for the adverse employment decision.  See Moore, 461 F.3d at 342.  The plaintiff then may rebut the defendant's allegedly legitimate reason by proving that the reason was in actuality pretext for discrimination.  See id.  The plaintiff at all times has the burden to prove that the employer engaged in intentional discrimination by a preponderance of the evidence.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

IV.

The USMS claims that it is entitled to judgment as a matter of law because Urgent has not named a proper defendant in this Title VII discrimination action.  The USMS contends that because Urgent applied for a position with independent contractor MVM, she cannot maintain a Title VII action against the USMS.  In response, Urgent argues that the USMS is a proper defendant to this Title VII action because it controls the

background investigation and makes the ultimate decision in the CSO hiring process.

Actions alleging discriminatory hiring practices may be brought against the federal government under 42 U.S.C. § 2000e-16.  Congress added § 2000e-16 to Title VII in 1972.  It states:

> [a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.

§ 2000e-16.

This provision "provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976); Francis v. Mineta, 505 F.3d 266, 271-72 (3d Cir. 2007).  Prior to 1972, a federal employee or applicant for employment could not maintain a judicial action against his or her federal government employer under Title VII.  As a 1971 Senate Report noted:

> an aggrieved Federal employee does not have access to the courts.  In many cases, the employee must overcome a U.S. Government defense of sovereign immunity or failure to exhaust administrative remedies with no certainty as to the steps required to exhaust such remedies.

Brown, 425 U.S. at 827-28 (quoting S. Rep. No. 92-415, at 16 (1971)).  Section 2000e-16 "(f)or the first time, permit[ed]

Federal employees to sue the Federal Government in discrimination cases."  Id. at 828 (quoting 118 Cong. Rec. 4929 (1972)).

Although § 2000e-16 authorizes discrimination claims against the federal government arising out of federal employment, it merely exposes the federal government to lawsuits concerning "[a]ll personnel actions affecting employees or applicants for employment" in the federal government.  See § 2000e-16.  Thus, only employees or applicants for employment with the federal government can sue the federal government under Title VII.

In Palmer v. Napolitano, 867 F. Supp. 2d 120 (D.D.C. 2012), the District Court for the District of Columbia held that a plaintiff could not maintain her Title VII action against the federal government because she did not have a direct employment relationship with the federal government.  It explained that "[i]ndividuals who are independent contractors or those not directly employed by such an employer are unprotected" under § 2000e-16 and "[s]tatus as an employee is therefore of crucial significance for those seeking to redress alleged discriminatory actions in federal employment."  See id. at 123 (quoting Spirides v. Reinhardt, 613 F.2d 826, 829-30 (D.C. Cir. 1979)).

Urgent has filed a Title VII action against the USMS alleging that it discriminated against her in conducting the background investigation required to gain employment with independent contractor MVM.  The USMS, as part of the United

States Department of Justice, is an executive agency of the federal government. As such, to proceed in her Title VII action against the USMS, Urgent must fit her failure to hire claim within § 2000e-16. See Brown, 425 U.S. at 835. However, Urgent is unable to do so because she did not apply for employment with the federal government. Rather, Urgent concedes that she applied for employment with MVM. In her summary judgment responsive brief, she stated:

> the discovery adduced to date in this matter clearly establishes that while MVM would have become Plaintiff's employer, it was not without passing through the gauntlet of Defendant's application process. While CSO's [sic] in the District Court were employed by MVM, it was Defendant who "essentially made the decision about whether to hire or not hire an applicant for a CSO position."

(emphasis added). In addition, during the application process, Urgent signed a form titled "Acknowledgment of Conditions of Court Security Officer Eligibility." In this form, Urgent agreed that her potential employer was MVM, and that if she was hired she could not represent to others that she was employed by the USMS.

Yet, Urgent argues that she can proceed in her Title VII action against the USMS because it played a prominent role in the CSO hiring process. She claims that it is "irrelevant" that MVM, not the USMS, employs CSOs because the USMS controls the background

investigation and ultimate hiring decision.  She points to Winfield's deposition testimony:

> Q:  Okay.  Am I correct that the Marshal Service would conduct a background investigation of any applicants for a CSO position and would essentially make the decision about whether to hire or not hire an applicant for a CSO position?
>
> A:  That is correct.

Urgent asserts that this testimony "clearly establishes that while MVM would have become Plaintiff's employer it was not without passing through the gauntlet of Defendant's application process."  Thus, she claims that she "need not establish that she applied for a position with Defendant; it is sufficient to demonstrate that Defendant retaliated in failing to hire Plaintiff."

We disagree.  Even assuming that the USMS controlled these aspects of the hiring process, Urgent cannot maintain a Title VII employment discrimination action against the USMS because § 2000e-16 only authorizes lawsuits against a federal agency brought by federal employees or applicants for federal employment. See § 2000e-16.  Regardless of whether the USMS participated in the hiring process, Urgent admits that she did not apply for federal employment.[2]  As a result, she cannot satisfy the

---

2.  Although the parties cite to cases that distinguish between federal employees and independent contractors, we need not apply

-14-

prerequisite to bringing a Title VII action against the federal government.  The clear and unambiguous language in § 2000e-16 does not create a right to sue simply because an individual underwent a federal background investigation to obtain private employment.  Section 2000e-16 does not extend a cause of action to an applicant for private employment, regardless of whether the federal government participated in the hiring process.

        As the parties recognize, this case presents a rather unusual set of facts.  The federal government does not typically conduct background investigations on behalf of private employers.  Yet, we note that the District Court for the District of South Carolina addressed this issue and reached the same conclusion as we do now.  In <u>Eghbali v. Dep't of Energy</u>, 90 F. Supp. 3d 587 (D.S.C. 2015), the court dismissed a Title VII action brought against a federal agency by an individual who was employed by a private entity but performed his employment duties at a federal nuclear site.  When the plaintiff was criminally indicted, the federal agency banned him from entering the nuclear site.  Although the indictment was eventually dismissed, the federal agency continued to deny the plaintiff access to the site.  The plaintiff then applied for a position with another private contractor located on the same nuclear site.  When the federal agency refused to allow

---

those cases here because Urgent concedes that she was not an applicant for federal employment with the USMS.

the plaintiff to access the site, the plaintiff was unable to interview for the new position.

Acknowledging that "it [wa]s undisputed that Plaintiff is neither an employee of [the federal agency] nor an applicant for employment with" the federal agency, the Eghbali court determined that the "Plaintiff cannot properly be considered an 'employee' of [the federal agency] for the purposes of 42 U.S.C. § 2000e-16(a)." See id. at 592. Thus, it held that "because Plaintiff cannot meet Title VII's threshold requirement that he is either an employee or an applicant for employment with [the federal agency], it appears beyond doubt that he can prove no set of facts which would entitle him to relief." Id.

Here, as in Eghbali, the federal government's participation in the employment process prevented Urgent from obtaining employment with a private company. Yet, Urgent cannot maintain a Title VII action against the government under § 2000e-16 because she applied for private employment not for employment with the federal government.

Accordingly, we will grant summary judgment in favor of the USMS.